Filed 1/22/14  P. v. Baltazar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PETER ALBERT BALTAZAR,<br><br>    Defendant and Appellant. | G048136<br><br>(Super. Ct. No. 09NF2874)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

Defendant Peter Albert Baltazar filed a notice of appeal after a jury convicted him of first degree murder (Pen. Code, § 187, subd. (a); all statutory references are to the Penal Code unless noted), and found to be true the allegation he personally discharged a firearm causing death (§ 12022.53, subd. (d)). His appointed counsel filed a brief summarizing the case, but advised this court he found no issues to support an appeal. At our invitation, Baltazar submitted a written brief on his own behalf. After considering Baltazar's brief and conducting an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436, we affirm.

FACTS

Around 10:30 p.m. on the evening of March 2, 2009, Leesa Sandel was in the kitchen of her Brea home when she heard a gunshot. Looking out the window, she saw a white, older model van traveling down the street with its side door open and its lights off. The door closed as the van rounded the corner. Sandel's neighbor, Patrick Mannion, heard a bang and saw a flash. Mannion walked outside to investigate, saw the van, and found the body of 24-year-old James Arrecis in the street. Arrecis had suffered a single gunshot wound to the head at close range by a 12-gauge shotgun.

Arrecis's pocket contained a piece of paper with Baltazar's mother's home address in La Habra. Arrecis's cell phone, found near the body, reflected Arrecis had exchanged text messages with Baltazar throughout the day. The last text message occurred at 5:09 p.m., and stated, "'Look, Dumbass. I didn't realize we were doing our own thing now that Mina is going to be gone. Get right, dog. Stop acting like my cuz. P.B.'" Arrecis's cell phone also showed he had communicated with Marina Nunez, Baltazar's cousin. Nunez and Arrecis were in an intimate relationship and had a young daughter together. The couple had been with Baltazar and Baltazar's father, Pedro, earlier in the day.

2

Zachary Morrison was a friend of Nunez's. Both he and Arrecis dealt illegal drugs. Morrison, Arrecis, Baltazar, and Pedro drank beer, smoked marijuana, and used methamphetamine together in Pedro's Anaheim garage, about five miles from the scene of the shooting, in the hours leading up to the murder. At some point that evening, Arrecis asked Morrison to go with him to pick up money. Arrecis drove Pedro's white minivan while Morrison sat in the front passenger seat and Baltazar sat in the back. Baltazar directed Arrecis to Brea and told him to pull over. Baltazar pulled out a sawed-off shotgun and told Arrecis, "'Get the fuck out of the car.'" Arrecis complied and asked what was going on. They walked towards the back of the car, exchanged some words, and a shot rang out. Arrecis fell over. Baltazar returned to the van, sat in the driver's seat, and drove off. Morrison closed the side door as they drove back to Pedro's. A few days later, Baltazar told Morrison to forget what he saw.

Police charged Morrison with the murder in October 2009. While in jail, Baltazar encouraged Morrison not to cooperate with the police. Morrison initially denied knowledge or involvement in the crime but ultimately entered into an agreement with the prosecutor in January 2012 to testify against Baltazar. He suspected the murder had something to do with Arrecis "'burn[ing]'" Baltazar in a credit card scam.

Officers searched Pedro's garage and found shotgun shells for a 12-gauge shotgun. Pedro eventually told the police his son admitted killing Arrecis because the latter had "disrespected" him.

Melissa Pardini dated Baltazar in 2009. She told officers Baltazar asked her to say he was in her bedroom on the night of the murder between 9:00 p.m. to 2:00 a.m. Baltazar told her he had a problem with Arrecis, Arrecis "got him mad," and Baltazar had "fucked up."

Baltazar's friend Virginia Arreola, who lived in Fullerton, testified Baltazar called one evening in March 2009 to ask if he could borrow a car. He and two other men visited her later that night and Baltazar urged her to tell anyone who asked about his

3

activities that evening that he was with Pardini. A week later, Arreola approached Baltazar and asked where she could locate Arrecis because she was missing money and suspected Arrecis had used her ATM card. Baltazar told her, "'You don't have to worry about it.'" He said, "'You heard on the news about the guy they found in La Habra[?]'" Baltazar revealed it was Arrecis, that she should not "'worry about it'" and it was "'none of [her] business, for [her] not go get in to it.'" After talking to the police, she wrote Baltazar a letter apologizing and asking for his forgiveness.

Following trial in November 2012, a jury convicted Baltazar as noted above. In March 2013, the trial court sentenced Baltazar to a prison term of 50 years to life, 25 years to life for murder (§ 190, subd. (a)) plus a consecutive 25 years to life for the firearm use enhancement (§ 12022.53, subd. (d)). The court imposed various fines and fees. The court awarded Baltazar 1,243 days of presentence credits.

POTENTIAL ISSUES

Baltazar's appellate lawyer identifies the following potential issues for our consideration: (1) whether trial counsel performed ineffectively by failing to request an alibi instruction; and (2) whether the trial court prejudicially erred by failing to instruct the jury to determine whether Pedro Baltazar was an accomplice.

*Counsel's Failure to Request Alibi Instruction Does Not Raise an Arguable Issue*

A defendant claiming a constitutional violation based on ineffective assistance of counsel must show "counsel's representation fell below an objective standard of reasonableness," and "the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Ledesma* (2006) 39 Cal.4th 641, 745-746.)

4

*People v. Freeman* (1978) 22 Cal.3d 434, 437-438, held an alibi instruction is mandatory if alibi witnesses are presented and the instruction is requested.[1] *Freeman* rejected a sua sponte duty to instruct on alibi because "the jury was instructed to acquit defendant if the prosecution failed to establish his guilt beyond a reasonable doubt. It would have been redundant to have required an additional instruction which directed the jury to acquit if a reasonable doubt existed regarding defendant's presence during the crime. As stated in [*People v. Whitson* (1944) 25 Cal.2d 593, 604], no juror could possibly be misled by the failure to instruct on the significance of defendant's alibi defense." (*Id.* at p. 438.)

In *People v. Alcala* (1992) 4 Cal.4th 742, 803-804, the Supreme Court rejected the defendant's contention the trial court had a sua sponte duty to instruct the jury on identity (CALJIC No. 2.91), eyewitness identification factors (CALJIC No. 2.92), and alibi (CALJIC No. 4.50). (*Alcala, supra,* at p. 804.) The court explained, "[i]t is sufficient that the jury be instructed generally to consider all the evidence, and to acquit the defendant in the event it entertains a reasonable doubt regarding his or her guilt." (*Id.* at p. 804.) The court acknowledged these instructions should be given upon request, but only if "identification is a crucial issue and there is no substantial corroborative evidence." (*Ibid.*) The court concluded defense counsel's failure to ask for these instructions did not prejudice defendant because "the instructions given adequately apprised the jury of all relevant legal principles." (*Id.* at pp. 804-805.) On this score, we have found no California case in which a defense attorney's failure to request an alibi instruction violated a defendant's right to effective assistance of counsel.

---

[1] The instruction in *Freeman* (CALJIC No. 4.50) provided: "'The defendant in this case has introduced evidence tending to show that he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal.'" (*Freeman*, *supra*, 22 Cal.3d at p. 437.)

Here, defense counsel lacked any basis to request an alibi instruction. Baltazar did not offer an alibi defense and rested without presenting any evidence. Morrison, a friend of Baltazar's cousin, was an eyewitness who testified that Baltazar shot Arrecis. Baltazar admitted killing Arrecis to his father, and made damaging admissions to Pardini and Arreola. The trial court instructed the jury on reasonable doubt (CALCRIM No. 220), and the evaluation of testimony (CALCRIM No. 226). In sum, defense counsel's failure to request an alibi instruction did not raise an arguable issue on appeal.

*Accomplice Instruction Concerning Pedro Baltazar*

The trial court instructed (CALCRIM No. 335) that "If the crime of murder with malice aforethought was committed, then Zachary Morrison was an accomplice to that crime. [¶] You may not convict the defendant of murder with malice aforethought based on the statement or testimony of an accomplice alone. You may use the statement or testimony of an accomplice to convict the defendant only if: [¶] 1. The accomplice's statement or testimony is supported by other evidence that you believe; [¶] 2. The supporting evidence is independent of the accomplice's statement or testimony; [¶] and [¶] 3. That the supporting evidence tends to connect the defendant to the commission of the crime. [¶] Supporting evidence, however, may be slight. It does not have to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact about which the witness testified. On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime. [¶] Any statement or testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that statement or testimony

6

the weight you think it deserves after examining it with care and caution and in the light of all the other evidence."

The failure to provide a similar instruction concerning Pedro Baltazar does not raise an arguable issue. "The court need give [accomplice] instructions only where there is substantial evidence that the witness was an accomplice. [Citations.] 'An accomplice is . . . one who is liable to prosecution for the identical offense charged against the defendant' (§ 1111) and does not include an accessory (§§ 31, 32; *People v. Tewksbury* (1976) 15 Cal.3d 953, 960). 'An accomplice must have "'guilty knowledge and intent with regard to the commission of the crime.'" [Citation.]' [Citation.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 466-467.)

The evidence in this case suggested Pedro was an accessory after the fact to murder, rather than a principal in the crime. In any event, ample evidence apart from that supplied by Pedro Baltazar's testimony and statements to the police connected Baltazar to the commission of the charged crime. Any theoretical error was harmless. (*People v. Williams* (2010) 49 Cal.4th 405, 456 [no prejudice where the accomplice's testimony was sufficiently corroborated]; (*People v. Richardson* (2008) 43 Cal.4th 959, 1024 [slight evidence suffices to corroborate accomplice testimony].)

*Baltazar's Letter Brief*

Baltazar's letter brief asserts "almost all the witnesses perjur[]ed themsel[ves]," their statements were made under duress, and trial counsel performed ineffectively by not attempting to suppress their statements. Baltazar cites nothing in the record supporting these claims. If witnesses perjured themselves, it was by testifying they did not remember statements they previously provided to the police implicating Baltazar, who had advised and intimidated them to lie about his whereabouts.

We discern no other arguable issues from counsel's brief, Baltazar's letter brief, or in our independent review of the record.

7

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.